UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
ELAINE DOUGLAS,                                     :        CASE NO. 14-CV-00887
                                                    :
                    Plaintiff,                      :
                                                    :
vs.                                                 :        OPINION & ORDER
                                                    :        [Resolving Doc. No. 16]
CITY OF CLEVELAND, et al.,                          :
                                                    :
                    Defendants                      :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Elaine Douglas worked for the City of Cleveland until May 31, 2013, when she

was laid off[1] from her position in the City Health Department's MomsFirst program.  MomsFirst

employed Douglas as a full-time assistant administrator.  In July 2013, the City hired another

person as a part-time assistant administrator in the same program.  Douglas sues Defendant City

of Cleveland and Defendant Lisa Matthews, who supervised Douglas at MomsFirst.

        Douglas claims that MomsFirst fired Douglas in retaliation for her use of family medical

leave, in violation of 29 U.S.C. § 2615(a).[2]  Douglas argues that MomsFirst failed to re-hire her

in retaliation for that same leave, in violation of 29 U.S.C. § 2615(a).[3]  Defendants move for

---

[1] Defendants dispute the legal implication of the term laid off versus terminated. Doc. 16-1 at 20.
As Plaintiff correctly points out, the terminology has little weight in the context of a Family Medical
Leave Act retaliation claim.  Doc. 20 at 21.  As a result, this Court uses the terms interchangeably.
    [2] Doc. 1-1.
    [3] *Id.*  In the initial complaint, Douglas also raised a whistleblower claim under state law.  Douglas
alleged that she had conversations with her supervisors regarding the lack of accountability in handling
gift cards administered by her program.  Douglas contended that firing her after these conversations
violated Ohio Revised Code § 4113.52(B)(1).  The parties have since stipulated to the dismissal of this
count.  *See* Doc. 19; Non-Document Entry, dated August 10, 2015.  As a result, this opinion does not
address the whistleblower count, although it was briefed in part in the opening and opposition brief.

Case No. 14-CV-00887
Gwin, J.

summary judgment as to both claims.[4]  Plaintiff opposes.[5]  For the following reasons, the Court

**GRANTS** Defendants' motion.

## I.      Background

### a.  *Beginning of Employment*

Douglas worked from April 2012 through May 2013 as an assistant administrator at the

MomsFirst Program.[6]  MomsFirst is a federally-funded grant program aimed at reducing

disparities in Cleveland infant mortality.[7]

At the relevant times, six employees and a supervisor, Defendant Lisa Matthews worked

on the MomsFirst program.  Grant funding paid the salaries for MomsFirst employees.[8]  Of the

six employees, Douglas was the last-hired.  She was the only non-essential staff, meaning that

that the "core functions of the program could be carried out" without her role.[9]

After being hired, Douglas initially struggled with work performance.  Her 30-day, 60-

day and 90-day reviews noted the need for improvement.[10]  Matthews gave Douglas an

additional thirty days to improve performance.[11]  At the end of the probationary period,

Matthews gave Douglas a "satisfactory" rating in each category.[12]

---

[4] Doc. 16-1.
[5] Doc. 20.  Defendants submitted a reply brief.  Doc. 22.
[6] Doc. 16-1 at 3-4.
[7] *Id.*
[8] Doc. 16-1 at 7.
[9] *Id.*; Doc. 16-3 at 219:21 to 220:2.
[10] Doc. 16-1 at 9; Doc. 20-23.
[11] Doc. 16-3 at  89:5 to 91:2.
[12] *Id.* at 111:25 to 113:19.

Case No. 14-CV-00887
Gwin, J.

      b.  *Course of Employment from 2012 to 2013*

From the end of 2012 to May, 2013, when Douglass was laid off, three overlapping sets of events occurred related to Douglas's employment in the MomsFirst group.

*First*, on January 22, 2013, Douglass applied for intermittent FMLA leave.[13]  Douglas requested the leave to provide assistance to her mother, who suffered from dementia.[14]  On January 29, 2013, the City's Human Resources department approved the FMLA leave.[15]  Matthews testified that she became aware of the FMLA leave as early as February 1, 2013.[16]  Douglas ultimately took four days of FMLA leave in 2013: February 1, February 11, March 1 and March 20.[17]

Douglas testified that when she used the FMLA leave "Lisa [Matthews'] attitude changed towards me."[18]  Douglas elaborated that, while Matthews never said anything directly, she "would smack her lips and roll her eyes" when Douglas discussed taking FMLA leave.[19]  Douglas also testified that Matthews would "try to get me to do work before I left [for FMLA leave].  If I had to leave, she would say, 'Well, can you do this before you leave.' And I was like 'Well, I really need to leave now.'"[20]  Douglas shows no other evidence that Matthews required Douglas to stay or take extra steps before exercising her FMLA leave.

*Second*, on February 4, 2013, Douglas received a poor annual performance review in a meeting with Matthews.[21]  In that February 4, 2013, meeting, Matthews put Douglas on a

---

[13] Doc. 20 at 3
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Doc. 16-1 at 12.
[18] Doc. 16-2 at 46:1-3.
[19] *Id.* at 52:24 to 53:3.
[20] *Id.* at 51:8-13.
[21] Doc. 20 at 5-6.

Case No. 14-CV-00887
Gwin, J.

performance improvement plan ("PIP").[22]  Matthews testified that although the meeting was held

on February 4, she prepared the annual review and PIP in January, before the performance

meeting and before Plaintiff's FMLA application.[23]

The PIP outlined specific tasks that Douglas needed to complete in her position as

administrative assistant.[24]  Among the tasks was creating a system to keep track of gift cards to

the local Dave's grocery store chain. The MomsFirst program distributed these gift cards to new

Cleveland mothers, but there was not a comprehensive tracking or inventory system for the

cards.[25]  Douglas did not complete this task on time.[26]  Although she was given an extension to

complete the task, and completed the task within the extended window, Douglas served a one-

day suspension on May 7, 2013 for violating the PIP.[27]

---

[22] *Id.*

[23] Doc. 16-3 at 119:2-9.

[24] Doc. 20-24. Douglas' Performance Improvement Plan cited five tasks: (1) maintain and update the MomsFirst referral logs; (2) Stock and inventory supplies and materials for the program (3) get a system in place for tracking expiring Dave's gift cards; (4) send bereavement cards quarterly when the list is received from the Child Fatality committee; (5) logging executive council reports.

[25] Plaintiff paints the Dave's gift card element of the PIP as evidence of Matthews' retaliatory motive. Doc. 20 at 5-7. This misconstrues the facts.  Plaintiff points out that the Dave's gift card task seems inconsistent with Douglas' 90-day evaluation, which stated that Douglas had already met her goal of, "devlop[ing] a system for tracking expiring Dave's cards." Doc. 20-23 at 5.  However, Matthews explained the discrepancy in her deposition: "At the time this was done, these were only done for the new cards that had full balances on them.  We discovered after the fact that there were loose cards hanging around with partial balances on them.  Like I said, someone would buy something, and they wouldn't use the entire card.  That was what this was referring to, the loose cards." Doc. 16-3 at 168:10-18.  Requiring Douglas to finalize the system for tracking Dave's cards was a proper use of the PIP procedure.

Moreover, Douglas herself testified that she did not believe she was placed on the PIP because of her FMLA Leave. Doc. 16-2 at 84:5 to 84:13 ("Q: Now is it your contention you were placed on a PIP, because you took Family Medical Leave Act leave? A: No, I don't believe that. Q: Okay.  I think you testified you were put on a PIP, because Lisa believed you were not performing in your job? A: There were some things that she, I guess, felt that I didn't complete; yes.").

[26] Doc. 16-2 at 90:14-23.

[27] Doc. 16-1 at 7.  Plaintiff's version of the facts makes several other unsupported conclusions regarding the PIP and Douglas' disciplinary action. First, Plaintiff attempts to drum up evidence of Matthews' retaliatory motive by arguing that two other employees – Lydia Hill and Mike Cummings – were responsible for the Dave's gift cards and yet were not placed on PIPs.  This conjecture ignores Matthews' uncontradicted testimony that Douglas was the one ultimately accountable for the gift card system. Doc. 16-3 at 166:23 to 167:9.

-4-

Case No. 14-CV-00887
Gwin, J.

*Third*, a federal funds sequestration resulted in a 5.28% reduction in the funds to the

MomsFirst program.[28]


    c. *Termination and Failure to Rehire*

The MomsFirst program fired Douglas, citing the loss of federal funds.[29] The head of the

Health Department, Karen Butler, had sole authority to terminate, layoff, and rehire employees

in the Health Department. Butler approved and authorized Douglas' layoff, and signed Douglas'

layoff notice.[30] It is undisputed that Butler did not directly know about Plaintiff's use of FMLA

leave.[31] Matthews testified that the recommendation to terminate Douglas was related

exclusively to budget, and not to Douglas' previous performance issues.[32]

On May 17, 2013, The Health Department's Human Resources representative, Cherita

Anglen met with Douglas to inform her of the layoff and provide her written notice.[33] At the

---

Second, Plaintiff argues that the bases for the disciplinary action were "specious" and part of Matthews' effort to "discipline Douglas without cause or justification." Doc. 20 at 8-9. However, Plaintiff ignores that Human Resources, not Matthews, conducted the disciplinary proceedings. Matthews testified that she did not make the disciplinary decision. Doc. 16-3 at 177:12 to 178:12. Indeed, the Notice of Pre-Discipline Conference, of which Plaintiff complains at length, was sent by an HR Manager, not Matthews. Doc. 20-26 at 1. Plaintiff has failed to prove any connection between the alleged inaccuracies in the disciplinary process to anybody with knowledge of Plaintiff's FMLA leave, or any employee with influence over Plaintiff's later termination.

[28] Doc. 16-3 at 21:2 to 21:7; Doc. 20 at 10. The parties agree that the date of this fund reduction is not precisely known. The parties refer to "late Spring of 2013" and "Spring 2013."

[29] Doc. 16-1 at 8; Doc. 20-20 (termination letter from the City of Cleveland, which begins, "We regret to inform you that due to a lack of funds, resulting from Federal imposed budget cuts; [sic] on June 1, 2013 the Health Start Grant program will be reduced for fiscal year 2013-2014 . . . As a result, you are being laid off from your position of Assistant Administrator, effective the end of business day on Friday May 31, 2013.")

[30] Doc. 16-4 at 75:4 to 75:20.

[31] Doc. 16-1 at 18; Doc. 20 at 17.

[32] Doc. 16-2 at 215:10 to 216:7.

[33] *Id.*

Case No. 14-CV-00887
Gwin, J.

time, Matthews and Anglen were aware that funding would become available for a part-time assistant administrator position, as opposed to Douglas's full time position.[34]

Anglen testified that she informed Douglas that the MomsFirst program would have a part-time administrative assistant position available.[35]  Anglen testified that Douglas stated she did not want the job and that she did not want to work for MomsFirst again.[36]  Douglas disputes that she said this.[37]

Matthews ultimately hired a former MomsFirst employee named Maria Roman to fill the part-time assistant position.[38]

The City of Cleveland Civil Service Rules require the City to prioritize a former employee who was laid off for lack of funds when a position in the same "classification" becomes available.[39]  Defendants present testimony that the new part-time position was not the same as Douglas's full-time position.[40]  As a result, Defendants argue that they were not required to re-hire Douglas for the new position.

Plaintiff argues that City policy required Cleveland to notify Douglas of the position and allow her to interview for it.  It is undisputed that Douglas was placed on the eligibility list for the classification of assistant administrator.[41]  Plaintiff contends that by virtue of being on the list, Douglas had to have been informed of the position.[42]

---

[34] Doc. 16-5 at 41:9 to 42:14.
[35] *Id.* at 43:12 to 46:24.
[36] *Id.*
[37] Doc. 16-2 at 117:24 to 118:5.
[38] Doc. 20 at 14-15.
[39] *Id.* at 13 (quoting from the Cleveland Civil Services Rules).
[40] Doc. 16-1 at 24-25; Doc. 16-5 at 115:1-19 (the conclusion from discussion with Civil Service was that "no, that's a different position, so you don't have to hire her back."); Doc. 16-6 at 104:1-6; *see also* Doc. 16-6 at 29:6 to 30:20 (providing background on the classification system and stating that a part time and full-time assistant administrator position would not necessarily be the same classification).
[41] Doc. 20 at 11; Doc. 16-1 at 24.
[42] Doc. 20 at 14-15; 26-28.  Plaintiff also raises impassioned arguments that Matthews improperly schemed to hire Roman by, among other things, informing Roman of the position before the notice was

Case No. 14-CV-00887
Gwin, J.

Plaintiff does not identify any other evidence that connects Plaintiff's FMLA leave with the failure to re-hire her.

## II.    Legal Standard

### a.   *Summary Judgment*

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[43]  The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[44]  Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[45]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[46]  Indeed, in order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support her position; a mere "scintilla of evidence" is insufficient.[47]  The Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[48]

---

officially published.  *Id.* at 14-15; 27-28.  Even if Matthews' actions were improper, which it is not clear they are, Plaintiff has failed to raise any connection between them and alleged retaliation against Douglas for FMLA leave.

[43] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).

[44] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[45] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[46] *Id.* at 586.

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[48] *Killion*, 761 F.3d at 580 (internal citation omitted).

Case No. 14-CV-00887
Gwin, J.

The moving party may also meet its burden under Rule 56 by "demonstrating the absence of evidence to support one of the essential elements of the nonmoving party's claim."[49]

### b.  FMLA Retaliation

Retaliation claims under the FMLA "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."[50]

To establish a prima facie retaliation case, a plaintiff must show (1) that she engaged in some activity that is protected by the FMLA; (2) that the employer knew the employee was exercising his rights under the FMLA; (3) after learning of the employee's exercise of his FMLA rights, the employer took an adverse employment action against him; and (4) there was a causal connection between the employee's FMLA activity and the adverse employment action.

An adverse employment action can include either a firing or a failure to rehire.[51] However, in a failure-to-rehire case, the plaintiff must show that the employer is under an obligation to consider the plaintiff for the position."[52]

Some courts have recognized the "cat's paw" theory of retaliation to allow a plaintiff to meet the prima facie case.[53]  In a "cat's paw" case, an unknowing supervisor is encouraged to take an adverse employment action by another employee who knows about the protected activity and has discriminatory animus about the use of the protected activity.  The cat's paw theory allows a plaintiff to meet the second and third prong of the prima facie analysis even when the

---

[49] *Marie v. American Red Cross*, 771 F.3d 344, 351 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 322-25).
[50] *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).
[51] *Callaway v. Academy of Flint Charter School*, 904 F.Supp.2d 657, 659 (E.D. Mich. 2012); *cf. Kocak v. Community Health Partners of Ohio*, 400 F.3d 466 (6th Cir. 2005) (recognizing failure to re-hire in the pregnancy discrimination context).
[52] *Wagner v. G.A. Gray Co,*, 872 F.2d 142, 146 (6th Cir. 1989).
[53] The term "cat's paw" derives from a fable in which a monkey tricks a cat into scooping chestnuts out of a fire so that the monkey can eagerly gobble them up, leaving none left for the cat. *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006).

Case No. 14-CV-00887
Gwin, J.

firing supervisor had no direct knowledge of the protected activity. However, the Sixth Circuit

has declined to state definitively whether the cat's paw theory is available to plaintiffs in FMLA

retaliation suits.[54]

Even if a plaintiff can use the cat's paw theory, a plaintiff must still prove the fourth

prong of a prima facie case: a causal connection between the FMLA activity and the adverse

employment action.  A plaintiff can prove the causal connection with indirect evidence.[55]  In

some circumstances, temporal proximity between the FMLA leave and the adverse action can be

sufficient to establish a causal connection.[56]  However, temporal proximity does not necessitate a

finding of causal connection in all cases.  Rather, other employment circumstances may negate

the existence of a potential "causal connection" raised by close temporal proximity.[57]

If a plaintiff can make out a prima facie case, the burden then shifts to the defendant to

offer a legitimate, non-discriminatory reason for the adverse employment action.[58]  The plaintiff

has the burden of showing that the reason proffered is mere pretext.[59]

---

[54] *Vander Boegh v. EnergySolutions, Inc.*, 536 F. App'x 522, 531-32 (6th Cir. 2013) ("The district court seemed to operate under the assumption that [the cat's paw] theory is available in a retaliation case such as this. . . . But the availability of cat's paw theory to impute knowledge of protected activity to the decisionmaker is less than clear under this court's precedent, and for this reason, it may become necessary for the district court to analyze the issue on remand.").

[55] *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) ("The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity.").

[56] *See, e.g.*, *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012).

[57] *Cf. Krumheuer v. GAB Robins North America Inc.*, 484 F. App'x 1, at 5-6 (6th Cir. 2012) (Plaintiff notified his employee of intent to take FMLA leave on January 24, 2007.  He was terminated approximately 14 days later.  The court recognized the "close temporal proximity."  Nevertheless, the court found that the Plaintiff still had not established a causal connection as the termination had been part of nation-wide layoffs that happened to occur near the time of the Plaintiff's FMLA leave request).

[58] *Weigel v. Baptist Hosp.*, 302 F.3d 367, 377-78 (6th Cir. 2002)

[59] *Id.*

-9-

Case No. 14-CV-00887
Gwin, J.

### III.  Discussion

#### a.  Count I

In the absence of the cat's paw theory of liability, Plaintiff's claims for FMLA retaliation must fail.  It is undisputed that Butler—the only person with final hiring and firing authority—did not know of Douglas's FMLA leave.  As a result, Plaintiff's claim would fail at the second prong of the prima facie analysis.

Even if Plaintiff could rely on the cat's paw theory, Plaintiff would still have to demonstrate a causal connection under the fourth prong: namely, that Matthews harbored discriminatory animus and that this animus caused Matthew's actions that lead to Plaintiff being fired and then not rehired.

Viewing these facts in the light most favorable to Plaintiff, the Court recognizes a disputed question of fact as to whether Matthews did in fact "roll her eyes" and request (but not require) that Plaintiff finish particular tasks before taking days of FMLA leave.[60]

However, this dispute is immaterial, and—at best—represents a mere scintilla of evidence as to discriminatory animus.  Matthews' alleged actions, even if true, are not sufficient alone for a reasonable jury to conclude that Matthews harbored discriminatory animus, and such animus motivated her to recommend Douglas' termination.[61]

---

[60] *Compare* Doc. 16-3 at 93:10 to 94:7 *with* Doc. 16-2 at 49:11 to 53:6.  Plaintiff has not put forward any evidence that disputes Defendants' evidence that the performance evaluation and PIP were prepared before Douglas applied for FMLA leave.  *See* Doc. 22 at 4-6.

[61] Moreover, Plaintiff's reliance on *Green v. Wal-Mart Stores, East, L.P.*, No. 3:11–cv–440., 2013 WL 3223629 (S.D. Ohio June 25, 2013), is misplaced.  The case stands for the proposition that a causal connection can be shown when employers treat an employee differently before and after the employee engages in protected activity.  But this disparate treatment analysis necessarily requires similar circumstances on either side of the protected activity.  Here, the MomsFirst budget cuts had not previously been encountered during Douglas' tenure.

Case No. 14-CV-00887
Gwin, J.

Plaintiff's efforts to demonstrate causal connection through the PIP fail. Plaintiff does not dispute that the Matthews wrote the PIP before Plaintiff's application for FMLA leave, negating the inference that the PIP was part of a scheme to get Plaintiff fired for the FMLA leave. Moreover, Human Resources, not Matthews (and not Butler) disciplined Plaintiff for failing to follow the PIP. As a result, Plaintiff cannot show how the discipline, even if flawed, was in any way connected to the alleged FMLA retaliation. Lastly, Douglas's work performance was not cited as a reason for Douglas's termination. The PIP and disciplinary action are not indirect evidence of retaliation.

By contrast, the parties do not dispute that MomsFirst faced budget cuts. The parties do not dispute that the budget cuts were the reason given at the time for Douglas's termination. The parties do not dispute that Plaintiff was the last-hired and only non-essential employee in the group.

Three months separate Plaintiff's four days of FMLA leave and her ultimate termination. However, this supposed temporal proximity is not sufficient in a case such as this where other undisputed employment circumstances explain the termination. Taking FMLA leave cannot shield Douglas from being laid off as a result of established and documented budget cuts. Plaintiff has not demonstrated any other causal connection between her FMLA activity and the adverse employment action.[62]

---

[62] Alternatively, even if Plaintiff could make out a prima facie case, her claim would fail pretext analysis. Courts analyzing FMLA retaliation claims apply *McDonnell-Douglas* burden shifting. After making out a prima facie case, the burden shifts back to the employer to offer legitimate, non-discriminatory reason. After making this showing, the burden shifts back to the plaintiff to establish that the reason given is mere pretext.

Plaintiff puts forward three arguments for why the budget cuts are mere pretext. Doc. 20 at 24-25. First, Plaintiff contends, Douglas was the only member of the MomsFirst staff who was terminated. This is undisputed, but is immaterial. On a staff of seven, it is not unusual that budget cuts would result in one staff member being fired.

Second, Plaintiff contends that Defendants "were already aware that they were to receive additional grant funding before Douglas was terminated. Indeed, Defendants were already engaged in the

Case No. 14-CV-00887
Gwin, J.

The Court **GRANTS** Defendants' motion for summary judgment as to Count I.

### b.  Count II

Moreover, Plaintiff has also failed to demonstrate that the failure to re-hire her was in violation of the Family Medical Leave Act.

Plaintiff must show that the employer is under an obligation to consider the plaintiff for the position.  She has not done so.  Defendants offered consistent testimony that the City reached the proper conclusion that City policies did not require the City to consider Douglas for the part-time position.

Plaintiff attempts to create a dispute of fact by selectively quoting the testimony of Director of Civil Service Lucille Ambroz.  Christine Anglen, the human resources officer who fired Douglas, testified that she spoke with Ambroz in reaching the conclusion that Douglas did not have to be considered in the re-hiring process.[63]  Ambroz, who has numerous such

---

process of replacing Douglas as she was being laid off." *Id.* at 24.  However, this is not the complete story.  The MomsFirst program obtained separate funding to hire a part-time, no-benefits employee.  The creation of the part-time position does not throw into question that the federal sequestration caused the budget cuts that eliminated Douglas' position.

       Third, Plaintiff argues that the MomsFirst program suffered even more significant cuts in funding since Douglas's termination, yet no one had to be laid off.  This is also insufficient to demonstrate pretext.  The other employees were deemed "essential" to the program.  It is not this Court's job to determine that later budget cuts were improperly applied to program funding rather than personnel.  Even if evidence to that effect was before the Court, it would not bring into question Douglas's termination in the first round of cuts.

       Finally, Plaintiff states that there remain genuine issues of material fact as to whether the budget cuts actually motivated the termination.  Plaintiff offers the conclusory statement that a reasonable jury could find that the budget cuts were a "convenient excuse."  Plaintiff took four days of FMLA leave in February and March of 2013.  Plaintiff has not put forward evidence not already addressed in this opinion that connects this activity to her layoff in the face of budget cuts two months later.  Plaintiff must raise genuine issues of material fact for her claim to survive summary judgment.  She has not done so.
[63] Doc. 16-5 at 115:1-19.

Case No. 14-CV-00887
Gwin, J.

discussions on a regular basis, could not recall the specific conversation.[64]  In Plaintiff's excerpt of the deposition, Ambroz appeared to deny having the conversation altogether.  However, the quote is taken out of context.  It is clear that Ambroz is merely saying she cannot specifically answer the employment question at the present time and that, if she answered it in the past, she does not recall the conversation.[65]  There is no contradictory evidence put forward by Ambroz's and Anglen's testimony.  The City concluded that it did not have the obligation to consider Douglas for the position.

Even if Plaintiff was supposed to be reconsidered for the position, Plaintiff's failure-to-rehire claim still fails.  Plaintiff still must raise some possibility that there was a causal connection between the failure to re-hire and the FMLA leave. Plaintiff offers no direct or indirect evidence.  Plaintiff presumes that the failure to consider her is sufficient at this stage.  It is not.

The Court **GRANTS** Defendants' motion for summary judgment as to Count II.


## IV.     Conclusion

For the foregoing reasons, Defendants are entitled to summary judgment on Counts I and II of the complaint.

IT IS SO ORDERED.


Dated:  March 22, 2016                                    s/      *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

---

[64] Doc. 16-6 at 41:4 to 42:2 ("Q: Did you ever tell Ms. Anglen that Ms. Douglas didn't need to be put in the part-time assistant administrator position? A: I don't recall that . . . Did Ms. Anglen ever ask you if they have to hire Ms. Douglas back? A: I don't recall that.").
[65] *Compare* 16-6 at 42:10-15 (Plaintiff's excerpt) *with* Doc. 16-6 from 42:10 to 43:4.